1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT
8                    CENTRAL DISTRICT OF CALIFORNIA
9
10   LUZ CENTENO,                          Case No. CV 17-3506-KK
11                          Plaintiff,
12            v.                           MEMORANDUM AND ORDER
13   NANCY A. BERRYHILL, Acting
     Commissioner of Social Security,
14                          Defendant.
15
16
17           Plaintiff Luz Centeno ("Plaintiff") filed a Complaint seeking review of the
18   final decision of the Commissioner of the Social Security Administration
19   ("Commissioner" or "Agency") denying his application for Title II Disability
20   Insurance Benefits ("DIB") and Title XVI Supplemental Security Income
21   ("SSI").  The parties have consented to the jurisdiction of the undersigned United
22   States Magistrate Judge, pursuant to 28 U.S.C. § 636(c).  For the reasons stated
23   below, the Commissioner's decision is REVERSED, and this action is
24   REMANDED for further proceedings consistent with this Order.

                                       **I.**

                             **PROCEDURAL HISTORY**
27           On October 7, 2013, Plaintiff filed an application for DIB, alleging a disability
28   onset date of May 20, 2011.  Administrative Record ("AR") at 203.  On October

17, 2013, Plaintiff filed an application for SSI, alleging the same disability onset date. Id. at 205. Plaintiff's applications were denied on January 24, 2014. Id. at 128-32.

On March 18, 2014, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 137. On July 17, 2015, Plaintiff appeared with counsel and testified at a hearing with the assistance of a Spanish-language interpreter before the assigned ALJ. Id. at 24, 74-94. A vocational expert ("VE") also testified at the hearing. Id. at 94-100. On August 25, 2015, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI. Id. at 32-33.

On September 24, 2015, Plaintiff filed a request to the Agency's Appeals Council to review the ALJ's decision. Id. at 16-17. On March 30, 2017, the Appeals Council denied Plaintiff's request for review. Id. at 1-4.

On May 9, 2017, Plaintiff filed the instant action. ECF Docket No. ("Dkt.") 1, Compl. This matter is before the Court on the parties' Joint Stipulation ("JS"), filed on January 10, 2018. Dkt. 14, JS.

## II.

## PLAINTIFF'S BACKGROUND

Plaintiff was born on August 27, 1957, and her disability onset date is May 20, 2011. AR at 33, 203, 205, 220. She was fifty-three years old on the alleged disability onset date and fifty-seven years old at the time of the hearing before the ALJ. Id. at 33, 74, 76. Plaintiff completed a fourth-grade education in Nicaragua, came to the United States when she was thirty years old, and has work experience as a cook's helper and a sewing machine operator. Id. at 33, 79-80, 95-96, 223, 233. Plaintiff alleges disability based on severe back, knee, and hand pain, inability to stand or sit, anxiety, and depression. Id. at 128, 232.

///
///
///

### III.

### STANDARD FOR EVALUATING DISABILITY

To qualify for benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve months. <u>Reddick v. Chater</u>, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

1. Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

2. Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

3. Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[1]

4. Is the claimant capable of performing work he has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.

5. Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

---

[1] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]," or ability to work after accounting for his verifiable impairments. <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1222-23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 883 (9th Cir. 2006).

See Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## IV.

## THE ALJ'S DECISION

### A.    STEP ONE

At step one, the ALJ found Plaintiff "has not engaged in substantial gainful activity since May 20, 2011, the alleged onset date." AR at 26.

### B.    STEP TWO

At step two, the ALJ found Plaintiff "ha[d] the following severe impairments: carpal tunnel syndrome; degenerative disc disease of the cervical and lumbar spinal areas; and impingement syndrome of the bilateral shoulders." Id.

### C.    STEP THREE

At step three, the ALJ found Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." Id. at 28.

### D.    RFC DETERMINATION

The ALJ found Plaintiff had the following RFC:

4

to lift and/or carry fifty pounds occasionally and twenty-five pounds
frequently, stand and/or walk up to six hours in an eight-hour
workday, and sit up to six hours in an eight-hour workday, with no
more than frequent climbing ladders, ropes, or scaffolds; no more than
frequent balancing, stooping, kneeling, crouching, or crawling; no
more than frequent fine manipulation with the bilateral hands; and no
more than occasional operation of hand controls with the bilateral
hands.

Id.

**E.      STEP FOUR**

At step four, the ALJ found Plaintiff is "unable to perform any past relevant
work."  Id. at 32.

**F.      STEP FIVE**

At step five, the ALJ found "[c]onsidering [Plaintiff's] age, education, work
experience, and [RFC], there are jobs that exist in significant numbers in the
national economy that [Plaintiff] can perform."  Id. at 33.

**V.**

**PLAINTIFF'S CLAIMS**

Plaintiff presents four disputed issues:

(1) Whether the ALJ adequately evaluated the opinion of the treating
physician, Dr. Ganjianpour;[2]

---

[2]      Social Security Regulations regarding the evaluation of opinion evidence and credibility were amended effective March 27, 2017.  Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision.  See Lowry v. Astrue, 474 Fed. App'x 801, 805 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."); Spencer v. Colvin, No. 15-05925, 2016 WL 7046848, at *9 n.4 (W.D. Wash. Dec. 1, 2016) ("42 U.S.C. § 405 does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking"); cf. Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58010, 58011 (Nov. 19, 2001) ("With respect to claims in which we have

5

(2) Whether the ALJ failed to evaluate the opinion of the agreed Medical Examiner Dr. Sew Hoy;

(3) Whether the ALJ properly evaluated Plaintiff's testimony; and

(4) Whether the ALJ's RFC finding rests on substantial evidence.

The Court finds the first issue dispositive of this matter and thus declines to address the remaining issues. See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [Plaintiff's] alternative ground for remand.").

## VI.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720; see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) ("[A] reviewing court . . . may not affirm simply by isolating a 'specific quantum of supporting evidence'"). "If the evidence can reasonably support

made a final decision, and that are pending judicial review in Federal court, we expect that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision."). Accordingly, the Court applies the versions of 20 C.F.R. §§ 416.927 and 416.929 that were in effect at the time of the ALJ's August 25, 2015 decision.

either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.  Reddick, 157 F.3d at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

The Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which she did not rely."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).  If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination."  Robbins, 466 F.3d at 885.

## VII.

## DISCUSSION

### THE ALJ ERRONEOUSLY REJECTED DR. GANJIANPOUR'S MEDICAL OPINION

**A.    RELEVANT FACTS**

**1.    Treating Physician Dr. Ganjianpour's Opinions**

Dr. Mark Ganjianpour is an orthopedic surgeon who began treating Plaintiff on July 7, 2011, shortly after Plaintiff's alleged disability date of May 20, 2011.  AR at 383-92.  Dr. Ganjianpour continued to treat Plaintiff between 2011 and 2013 and performed two operations on Plaintiff in 2012.  Id. at 316-64, 383-97.

On the first physical examination in July 7, 2011, Dr. Ganjianpour observed tenderness and spasm throughout the spine; reduced sensation at the upper and lower extremities; pain with Spurling and Lhermitte tests; positive straight leg raise tests (seated and supine); positive impingement signs at the bilateral shoulders; positive Phalen's and Tinel's signs; and reduced sensation at the bilateral thumbs and index fingers.  Id. at 30, 384-90.  Dr. Ganjianpour's evaluation of an x-ray of Plaintiff's cervical spinal area revealed evidence of disc space narrowing at C5-C6,

1  and an x-ray of Plaintiff's lumbar spinal area revealed evidence of disc space
2  narrowing at L4-L5 and L5-S1. Id. at 30, 390.

3  　　　　Between 2011 and 2013, Dr. Ganjianpour noted Plaintiff's complaints of
4  neuropathic symptoms (i.e., aching, numbness, tingling) at the bilateral hands and
5  pain at the neck and back. Id. at 30, 344, 348, 356, 362, 384-85. On physical
6  examinations, Dr. Ganjianpour observed a variety of functional limitations,
7  including positive Tinel's signs; reduced grip strength, spasm at the bilateral
8  trapezius areas; reduced range of motion of the cervical spinal area; and spasm at
9  the lumbar spinal area. Id. at 30, 344, 348, 352. 356, 362, 320, 323, 386-87. Dr.
10 Ganjianpour ordered and evaluated several diagnostic studies such as
11 neurodiagnostic studies which revealed evidence of carpal tunnel syndrome, and
12 MRI studies of Plaintiff's cervical and lumbar spine which revealed multiple disc
13 protrusions ranging from two millimeters to four millimeters. Id. at 30, 317, 348-
14 49, 353, 363. Dr. Ganjianpour diagnosed bilateral hands carpal tunnel syndrome
15 based on clinical criteria, and performed carpal tunnel release on Plaintiff's bilateral
16 hands, which relieved some symptoms. Id. at 317, 348, 352-53, 356, 363. Plaintiff
17 continued to experience decreased grip strength in her hands and stiffness and
18 spasms of the lumbar spine. Id. at 328, 332, 336.

19 　　　　On February 25, 2013, Dr. Ganjianpour completed a Permanent and
20 Stationary Medical-Legal Report on Plaintiff's behalf. Id. at 316-27. Dr.
21 Ganjianpour opined Plaintiff was only capable of lifting up to twenty pounds, with
22 no repetitive bending or stooping, torqueing, pushing and pulling, or flexion and
23 extension of the neck. Id. at 325. Dr. Ganjianpour noted that Plaintiff "relate[d]
24 that she is currently experiencing difficulty getting in and out of a car, brushing her
25 teeth, cutting her food, lifting a full cup to her mouth, performing light housework,
26 making a meal, opening a new milk carton, opening car doors, opening new or
27 previously opened jars, shopping, turning faucets on and off and sleeping." Id. at
28 319. Dr. Ganjianpour concluded that Plaintiff was unable to "return back to a job

as a cook." Id. at 326. Dr. Ganjianpour also listed objective factors of disability regarding the cervical spine (spasm about the cervical spine, decreased range of motion, and pain radiating down to bilateral shoulders); the lumbar spine (degeneration of the lumbar spine of x-rays, MRI showing a 4 mm broad based disc protrusion at L4-L5 as well as L5-S1, positive straight leg raises, numbness and tingling at L4-L5 and L5-S1 distribution); bilateral shoulders (rotator cuff loss of strength in forward flexion, abduction, and external rotation, and no evidence of rotator cuff tear); and the left and right hand (scars from previous carpel tunnel incisions and decreased jamar strength). Id. at 327.

### 2. Consultative Examiner Dr. Wallack's Opinion

Dr. Michael Wallack is an internist who performed a single consultative internal medicine evaluation on Plaintiff on December 23, 2013. AR at 30, 400-06. Dr. Wallack noted Plaintiff's complaints of pain in her neck, back, knees, and residual pain in hands and dropping items due to difficulty with manipulation even after carpal tunnel syndrome repair in 2012. Id. at 400-01. On physical examination, Dr. Wallack observed tenderness at the cervical spinal area and upper shoulders. Id. at 402. Dr. Wallack also reviewed x-rays of Plaintiff's lumbar spine and considered them in his opinion. Id. at 404. Dr. Wallack diagnosed lower back pain as a result of a cumulative trauma in the workplace, neck pain with normal range of motion, knee pain with normal range of motion, satisfactory gait, and no objective findings on the history of carpal tunnel repair with alleged difficulty with manipulation. Id. Additionally, Dr. Wallack observed no swelling or deformity; negative Tinel's sign; and normal motor strength, reflexes, and sensation at the extremities. Id. at 403-04. Dr. Wallack opined Plaintiff's impairments caused no functional limitations. Id. at 405.

### 3. Agreed-Upon Examiner Dr. Sew Hoy's Opinion

Dr. Andrew Sew Hoy is an orthopedic surgeon who performed an agreed medical evaluation of Plaintiff on March 11, 2014. Id. at 422. Dr. Sew Hoy noted

Plaintiff's complaints of pain in her neck, entire back, left hand, numbness in lower legs, cramping pain in the left foot plantarly, and radicular symptoms at the lower extremities.  Id. at 422, 424.  At physical examination, Dr. Sew Hoy observed "crepitus to range of motion testing of the cervical spine," "muscle spasm palpable with respect to the cervical spine at C7-T1 in the paravertebral musculature on either side of the midline," "muscle spasm palpable in the paravertebral musculature on either side of the midline at L5-S1," and reduced range of motion throughout the spine.  Id. at 425-26, 435-36.

### 4.  Treating Physician Dr. Hernandez's Opinions

Dr. Valentin Hernandez is a physician who treated Plaintiff on April 8, 2015, April 15, 2015, April 22, 2015, April 27, 2015, May 8, 2015, May 29, 2015, June 15, 2015, and June 20, 2015.  Id. at 448-65.  On physical examinations, Dr. Hernandez noted Plaintiff could not turn her head, tenderness along the cervical spine, decreased range of motion throughout the back, effusion of the knee with tenderness and warmth, and tenderness and decreased range of motion in the knees, shoulders, and wrists.  Id. at 448, 453.

### 5.  The ALJ's Rejection of Dr. Ganjianpour's Opinion

The ALJ rejected Dr. Ganjianpour's opinion in favor of the examining medical expert, Dr. Wallack.  Id. at 30-32.  Specifically, the ALJ gave "little probative weight" to Dr. Ganjianpour's February 25, 2013 medical opinion, and "significant probative weight" to Dr. Wallack's December 23, 2013 consultative opinion.  Id. at 32.

In rejecting Dr. Ganjianpour's opinion, the ALJ claimed Dr. Ganjianpour's opinion was (1) not supported by the medical record, but based on Plaintiff's subjective complaints; (2) in conflict with Dr. Wallack's consultative examination report; and (3) was an unreliable assessment of Plaintiff's current condition because it was offered "more than two years" before the hearing.  Id.
///

**B.     APPLICABLE LAW**

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996); see also Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). When the "treating source's medical opinion" is not given "controlling weight," the ALJ applies the following sub-factors to determine how much weight to give the medical opinion: "[l]ength of the treatment relationship and the frequency of examination"; "[n]ature and extent of the treatment relationship." 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), 416.927(c)(2)(i)-(ii). In addition, an ALJ "generally give[s] more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" Carmickle, 533 F.3d at 1164; see also Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Garrison, 759 F.3d at 1012. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical

evidence, stating [her] interpretation thereof, and making findings." Reddick, 157 F.3d at 725. The ALJ "must set forth [her] own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

While an ALJ is not required to discuss all the evidence presented, she must explain the rejection of uncontroverted medical evidence, as well as significant probative evidence. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Moreover, an ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster her findings. See Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding an ALJ cannot "selectively rel[y]" on some entries in plaintiff's records while ignoring others that "indicated, continued, severe impairment").

## C.    ANALYSIS

Here, because Dr. Ganjianpour's opinions were contradicted by the other medical evidence of record, the ALJ was required to present "specific and legitimate reasons that are supported by substantial evidence in the record" to reject Dr. Ganjianpour's opinions. Carmickle, 533 F.3d at 1164; Ryan, 528 F.3d at 1198; Ghanim, 763 F.3d at 1160-61; Garrison, 759 F.3d at 1012. As set forth below, although the ALJ presented specific reasons, they are not legitimate or supported by the record.

### 1.    Objective Medical Evidence

First, in rejecting Dr. Ganjianpour's opinion, the ALJ reasoned: "the opinion cannot be given controlling weight because it is without substantial support from the other evidence of record, including the objective medical evidence." AR at 32. The ALJ also rejected Dr. Ganjianpour's opinion for adopting Plaintiff's subjective complaints. Id. However, as set forth below, Dr. Ganjianpour's opinion was well-supported by his own observations and findings. See Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1199 (9th Cir. 2008) (finding "where the doctor does not discredit th[e] [patient's] complaints and supports his ultimate opinion with

his own observations," the ALJ erroneously rejected a physician's opinion by only "questioning the credibility of the patient's complaints").

Dr. Ganjianpour's opinions were drawn from an extensive treating relationship with Plaintiff. See AR at 316-64, 383-97. Because the ALJ did not give the treating physician's opinion "controlling weight," the ALJ should have examined the following sub-factors: length of the treatment relationship and the frequency of examination; and the nature and extent of the treatment relationship. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), 416.927(c)(2)(i)-(ii). Here, Dr. Ganjianpour treated Plaintiff for approximately two years starting on July 7, 2011, less than two months after Plaintiff's alleged disability onset date. AR at 316-64, 383-97. As supported by the record, Dr. Ganjianpour frequently examined Plaintiff. See id. at 383-99 (July 7, 2011), 362-64 (August 8, 2011), 356-58 (September 22, 2011), 429 (January 4, 2012), 352-54 (March 2, 2012), 348-49 (April 13, 2012), 344-45 (July 11, 2012), 340-41 (July 27, 2012), 336-37 (September 7, 2012), 332-33 (October 19, 2012), 328-29 (November 29, 2012), 316-27 (February 25, 2013), 423, 431 (July 2013). Dr. Ganjianpour routinely reassessed Plaintiff as her symptoms worsened or improved, often finding bilateral shoulder impingement, bursitis mostly radiating from the neck down the shoulders, lumbar spine degenerative discs at L4-L5 and L5-S1, and a two millimeter cervical spine disc protrusion at C6-C7. Id. at 324, 328-29, 332-33, 336-37, 340-41, 348-49, 353, 356-57, 363, 390.

Dr. Ganjianpour's findings and observations supported his opinions. For example, Dr. Ganjianpour performed numerous physical examinations, which revealed amongst other symptoms,[3] Tinel's and Phalen's signs, spasms in

---

[3]    Dr. Ganjianpour's physical examinations also revealed the following:
- healed incision, improved grip strength, decreased scar sensitivity, and stiffness and spasm in lumbar spine. AR at 328.
- scar sensitivity over carpal tunnel, ability to make fist, maintaining significant grip strength loss. Id. at 332.
- scar sensitivity, significant grip loss, tenderness over scar, inflamed scar but no evidence of infection. Id. at 336.

13

Plaintiff's lumbar spine, trapezial spasm in bilateral shoulders.  Id. at 319-24, 328, 332, 336, 340, 344, 348, 352, 356, 362, 386-90.  Dr. Ganjianpour also ordered diagnostic tests from other physicians and reviewed multiple x-rays,[4] MRIs,[5] as well as EMGs and NCVs,[6] which indicated abnormalities such as two or four millimeter disc protrusions in Plaintiff's cervical spine and bilateral hand carpal tunnel syndrome.  Id. at 317, 348, 353, 356, 390.

Additionally, Dr. Ganjianpour's treatment of Plaintiff was extensive and included an injection to Plaintiff's left hand, anti-inflammatory medications,

- incision healing well, some thickening of scar tissue, decreased grip strength, spasm in lumbar spine with radiation of pain down to right knee and calf.  Id. at 340.
- positive Tinel's and Phalen's signs and tenderness over the carpal tunnel.  Id. at 344.
- incision sites healing on left hand, grip loss, positive Tinel's and Phalen's signs on right hand, clinical symptoms consistent with neurodiagnostic testing which shows severe carpal tunnel syndrome.  Id. at 348.
- swelling in left hand, significant scar sensitivity, spasms in lower back, trapezial spasms in bilateral shoulders.  Id. at 352.
- positive Tinel's in both hands, numbness and tingling.  Id. at 356.
- stiffness, numbness and tingling in hands, positive Tinel's signs, decreased motion of the neck, spasm about lumbar spine.  Id. at 362.
- spasm at C3-C7 in the cervical spine, spasm at L3-S1 in the lumbar spine.  Id. at 320, 323, 386-87.

[4]    On July 7, 2011, Dr. Ganjianpour reviewed x-rays of Plaintiff's cervical spine (which revealed some C5-C6 disc space narrowing), lumbar spine (which revealed L4-L5 and L5-S1 disc space narrowing), bilateral hands (which revealed small 1 cm x 7 mm cyst in the right distal radius in the subchondral bone), and bilateral shoulders.  AR at 390.

[5]    On August 8, 2011, Dr. Ganjianpour reviewed the July 26, 2011 MRI scan of Plaintiff's cervical spine, which revealed a two millimeter disc bulge with right neural foraminal narrowing.  AR at 317, 363.  Dr. Ganjianpour also reviewed the September 25, 2011 MRI of Plaintiff's lumbar spine revealed generative discs at L4-L5 and L5-S1; with a four-millimeter central broad based disc protrusion at L4-L5; and Schmorl's nodes present and a three-millimeter paracentral broad based disc protrusion slightly indenting the anterior thecal sac at L1-L2, which Dr. Ganjianpour opined to cause "radiculopathy down the leg, causing right-sided knee pain."  Id. at 317, 348-49, 353.

[6]    On September 22, 2011, Dr. Ganjianpour reviewed June 26, 2011 EMGs and NCVs of bilateral upper extremities, which revealed bilateral hand carpal tunnel syndrome.  AR at 356.  After reviewing the EMGs/NCVs, Dr. Ganjianpour also provided an injection to Plaintiff's left hand, which only provided slight relief.  Id. at 317.

14

bilateral hand braces, electro-stimulation, and physical therapy two times a week for approximately twelve weeks.  Id. at 317, 329, 333, 337, 341, 363, 391, 423.  Dr. Ganjianpour was also the physician who performed Plaintiff's two carpal tunnel release operations on January 10, 2012 and July 17, 2012.  Id. at 317, 333, 337, 340-41, 344, 349, 353.  Thus, because the ALJ's finding did not account for Dr. Ganjianpour's extensive treating relationship and because Dr. Ganjianpour's opinion relied on his own observations and findings, the ALJ's reliance on a lack of objective evidence is not a legitimate reason for rejecting Dr. Ganjianpour's opinions.

### 2.    In Conflict with Dr. Wallack's Consultative Exam

The ALJ additionally rejected Dr. Ganjianpour's opinion because it was in conflict with consultative Dr. Wallack's opinion.  AR at 32.  The ALJ stated Dr. Wallack's opinion was "deserving of significant probative weight because Dr. Wallack had the opportunity to examine the claimant and consider her subjective complaints."  Id.  However, as set forth above, Dr. Ganjianpour also had this opportunity and, in fact, had significantly more opportunities to examine claimant and consider her subjective complaints.  The ALJ also stated "[m]oreover, Dr. Wallack's opinion largely is supported by the objective medical evidence, which shows a history of complaints of back pain, neck pain, wrist pain, and neuropathic symptoms, but otherwise mostly normal musculoskeletal and neurological functioning."  Id.  As discussed above, objective evidence supports Dr. Ganjianpou's opinion.  Additionally, in general, an ALJ "give[s] more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."  20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).  Here, Dr. Ganjianpour is an orthopedic surgeon, and Dr. Wallack is an internist.  AR at 30, 316-64, 383-97, 400-06.  Accordingly, more weight should be given to Dr. Ganjianpour's opinion related to his specialty area of orthopedics.

Furthermore, if the treating physician's medical opinion is inconsistent with other substantial evidence in the record, "[t]reating source medical opinions are still entitled to deference and must be weighted using all the factors provided in" 20 C.F.R. § 404.1527." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) (quoting SSR 96-2p); id. ("Adjudicators must remember that a finding that a treating source medical opinion is . . . inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." (quoting SSR 96-2p)). As previously discussed, the ALJ failed to properly consider the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii) and 416.927(c)(2)(i)-(ii). Had she done so, she would have found they would have supported giving Dr. Ganjianpour's opinion substantial weight.

### 3. Opinion Two Years Prior to the Hearing

Finally, in rejecting Dr. Ganjianpour's opinion, the ALJ also reasoned that the February 2013 opinion from "more than two years ago" casts "additional doubt on the reliability of [Dr. Ganjianpour]'s opinion as an assessment of the [Plaintiff's] current condition." AR at 32. However, this is not a legitimate reason supported by the record because the ALJ relied on Dr. Wallack's opinion, which was written the same year as Dr. Ganjianpour's opinion. Id. at 74, 316-27, 400-06. The ALJ's reasoning is further undermined because she did not rely on the most recent evaluations. Specifically, the ALJ did not rely on the April 2014 evaluation by Dr. Sew Hoy, an orthopedic surgeon, who observed crepitus, spasm, and reduced range of motion throughout Plaintiff's spine. See id. at 422-37. The ALJ also did not rely on the 2015 medical opinions by Dr. Hernandez who treated Plaintiff nine times over three months and observed decreased range of motion and

tenderness along the cervical spine, back, knees, shoulders, and wrists. See id. at 447-65.

Significantly, the opinions of both Dr. Sew Hoy and Dr. Hernandez support Dr. Ganjianpour's opinions. For example, after examining Plaintiff on March 11, 2014, Dr. Sew Hoy opined the "orthopedic findings appear to be reasonably consistent with injuries claimed by" Plaintiff, and that other factors including "diagnostic testing" revealed a "history consistent with injury to her cervical spine." Id. at 434-35. Dr. Sew Hoy also found that after two surgeries in 2012, Plaintiff still had permanent residual impairments to both wrists and hands "per traditional application of the Guides to the Evaluation of Permanent Impairment." Id. at 435. Dr. Sew Hoy's examination also revealed "palpable spasm" in Plaintiff's neck and lower back, asymmetrical forward flexion of the cervical spine and lumbar spine, as well as grip strength loss in both upper extremities. Id. at 435. Similarly, on physical examination on May 29, 2015, Dr. Hernandez found limited motion of Plaintiff's neck with tenderness down the cervical spine into the upper back, L1-S1 tenderness bilaterally, and tenderness in the knees, shoulders, and wrists with decreased range of motion. Id. at 453. For another example, in the most recent physical examination of Plaintiff on June 20, 2015—one month before the ALJ hearing—Dr. Hernandez assessed Plaintiff could not turn her head, tenderness along the cervical spine, decreased range of motion in her back, and effusion of the knee with tenderness and warmth. Id. at 448. Hence, the ALJ's reason for rejecting Dr. Ganjianpour's opinion because it was written "more than two years" before the hearing was not a legitimate reason for rejecting Dr. Ganjianpour's opinions.

For all the foregoing reasons, the Court finds the ALJ failed to give specific and legitimate reasons for rejecting the opinions of Dr. Ganjianpour.

///

///

## VIII.

## RELIEF

"When an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Hill, 698 F.3d at 1162. "We may exercise our discretion and direct an award of benefits 'where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed.'" Id. "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." Id.; see also Reddick, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.").

In this case, the record has not been fully developed. The ALJ must specifically provide specific and legitimate reasons for rejecting the medical opinions of Dr. Ganjianpour. Accordingly, remand for further proceedings is appropriate.

///
///
///
///
///
///
///
///
///
///

# IX.

## ORDER

For the foregoing reasons, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this Order.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

Dated: January 31, 2018

_____
HONORABLE KENLY KIYA KATO
United States Magistrate Judge